# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT FENNELL, | No. 4:17-CV-01520 |
| Plaintiff, | (Judge Brann) |
| v. | |
| JOHN E. WETZEL, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### NOVEMBER 25, 2020

Plaintiff Robert Fennell, a state prisoner presently confined at the State Correctional Institution at Smithfield in Huntingdon, Pennsylvania, filed a civil rights amended complaint pursuant 42 U.S.C. § 1983 regarding mistreatment he allegedly encountered while incarcerated at SCI Smithfield.[1] Presently before the Court is Defendants' motion for summary judgment, which is ripe for adjudication.[2] For the reasons that follow, the Court will grant this motion.

### I.    BACKGROUND

####    A.    Factual Allegations of the Amended Complaint

In or around September 2011, Plaintiff became a resident of SCI Smithfield.[3] Plaintiff alleges that prior to his arrival at SCI Smithfield, Defendants Donald Britton

---

[1] Doc. 66.
[2] Doc. 82.
[3] Doc. 66 at 4.

and Lisa Hollibaugh knew of Plaintiff due to a prior altercation between Plaintiff and Defendant Hollibaugh's husband.[4]  Plaintiff alleges that these Defendants harbored a vendetta against Plaintiff due to the altercation.[5]

Shortly after arriving at SCI Smithfield, Plaintiff was placed in a cell without necessary personal items and some of his legal materials, and he was left "for days" without these items.[6]  As a result, he could not file documents with the court or communicate with his family.[7]  He could also not complain to staff members about the mistreatment he received from these defendants.[8]  Defendant Britton made a comment to Plaintiff insinuating that he knew that Plaintiff had filed a civil suit against "his people."[9]

A week later, Plaintiff's personal property arrived at SCI Smithfield from SCI Houtzdale, but it was confiscated without any explanation.[10]  Plaintiff did not discover this confiscation until October 29, 2011.[11]  Plaintiff sought the return of his property, and certain Defendants informed him that all he needed to do was to "stop with all the paperwork and all of this will stop."[12]  In addition, on October 8, 2011,

---

[4]  *Id.*
[5]  *Id.*
[6]  *Id.*
[7]  *Id.*
[8]  *Id.*
[9]  *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.* at 5.

Plaintiff alleges that another Defendant informed him that if he stopped filing grievances and lawsuits, he would be allowed visitation, telephone privileges, etc.[13]

Some time thereafter but before March 1, 2012, Plaintiff attempted to give a grievance to Defendant Narehood for mailing.[14] Defendants Narehood, Britton, and two unknown officers entered Plaintiff's cell and used excessive force against Plaintiff.[15] Plaintiff met with Defendant Whitesel and another person regarding the use of excessive force against him, and Defendant Whitesel informed him that due to his repeated attempts to file grievances and lawsuits, he "will remain on RRL[16] until such actions stop."[17] Plaintiff also alleges that several false DC-141s were issued against him in order to deter his filing of grievances and lawsuits.[18] Plaintiff states that he was found guilty of these charges, despite their being false.[19]

In or around August 4, 2012, one of the defendant corrections officers ordered Plaintiff's cell water to be shut off for twenty-one days.[20] When Plaintiff needed to use the toilet, he would have to request that his water be turned on from the working officer on duty.[21]

---

[13] *Id.* at 6.
[14] *Id.*
[15] *Id.*
[16] It is not clear from the amended complaint what RRL is, but the Court presumes it is some sort of restriction.
[17] *Id.*
[18] *Id.* at 7.
[19] *Id.*
[20] *Id.* at 8.
[21] *Id.*

3

On October 6, 2013, Defendant Bickert saw Plaintiff was attempting to file a Pennsylvania PCRA petition.[22] That Defendant then confiscated Plaintiff's trial transcripts and new evidence.[23] Plaintiff requested a grievance in order to prove that these materials were taken by the Defendant, however the grievance was denied.[24] Plaintiff sought the help of the captain, presumably to have his legal materials returned to him.[25] Defendant Bickert refused to permit Plaintiff to speak with the captain.[26] In order to get the attention of the captain, Plaintiff placed paper on his cell door.[27] This, however, caused an extraction team to remove Plaintiff from his cell.[28] During the extraction, Plaintiff was sprayed with pepper spray and was allegedly subjected to excessive force.[29] He was then left in a cell naked and injured for seven days, without access to medical treatment.[30]

Plaintiff did not file any grievances regarding excessive force used against him, until October 15, 2013.[31] On that day, Plaintiff was attempting to file a grievance when another corrections officer saw him and issued a DC-141.[32] Plaintiff received ninety days "DC time" for his attempt to file a grievance and his property

---

[22] *Id.* at 9.
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.* at 9-10.
[30] *Id.* at 10.
[31] *Id.* at 7.
[32] *Id.*

and privileges were removed.[33] At the disciplinary hearing for the DC-141, Plaintiff explained that he was receiving false disciplinary reports in order to deter him from filing grievances or lawsuits against prison officers.[34] Plaintiff alleges that the disciplinary hearing officer did not believe him and found him guilty of all charges.[35] Plaintiff attempted to file other grievances, and he was punished for his attempts to do so.[36]

Plaintiff filed several sick call slips to request medical treatment for his injuries.[37] He eventually saw an outside doctor, and he alleges that staff within the prison refused to help him or to provide him with medical care.[38]

Plaintiff continued his pattern of filing grievances despite the alleged repercussions he experienced for doing so.[39] He also sought out assistance from various prison staff for medical assistance and to stop the retaliation for filing grievances, to no avail.[40]

On December 23, 2013, Defendant Shope met with Plaintiff and admitted that he participated in the extraction and was also responsible for inflicting some of the injuries that Plaintiff sustained during the extraction.[41] Plaintiff stated that the

---

[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.* at 11.
[37] *Id.* at 11.
[38] *Id.* at 11-12.
[39] *Id.* at 12.
[40] *Id.* at 12-13.
[41] *Id.* at 13-14.

5

assault was on video and that he would be requested the video footage, however Defendant Shope stated that any footage would be edited.[42]

A few days later, on December 28, 2013, Plaintiff spoke with Defendant Houck about locating a nurse who witnessed the use of excessive force against Plaintiff and failed to intervene.[43] Defendant Houck declined to help Plaintiff.[44]

At some point, Defendant Whitesel discontinued Plaintiff's eczema medication.[45] Plaintiff alleges that without his medication, he would scratch himself until he bleeds, and that defendants knew that without this medication, Plaintiff would be unable to function properly.[46] Plaintiff complained about not receiving his medication, and he was told that if he would stop filing grievances and civil actions, "everything would stop" and he would receive his medication.[47]

Plaintiff alleges that Defendant Hollibaugh would confiscate legal documents he received, and the withholding of these legal materials caused Plaintiff to be time barred in several cases and also caused Plaintiff to miss deadlines because he did not receive correspondence from the courts and other agencies.[48]

---

[42] *Id.* at 14.
[43] *Id.*
[44] *Id.*
[45] *Id.* at 16.
[46] *Id.*
[47] *Id.*
[48] *Id.*

6

Plaintiff alleges that in 2014, Defendant Abrashoff gave a released prisoner the contact information for one of Plaintiff's family members.[49] Plaintiff alleges that this was done to deter him from filing grievances and lawsuits against prison officers.[50]

In or around October 2015, Plaintiff mailed a civil rights lawsuit to the clerk of court.[51] Plaintiff was advised by the court that he needed to comply with its procedures to proceed *in forma pauperis*.[52] Shortly thereafter, Plaintiff's civil rights complaint was dismissed for failure to comply with those procedures.[53]

### B. Undisputed Material Facts

Plaintiff has been incarcerated at SCI Smithfield since September 2011.[54] Plaintiff had previously filed a lawsuit in the Middle District of Pennsylvania, docketed as No. 4:15-CV-1959.[55] That lawsuit was ultimately dismissed on November 23, 2015 for Plaintiff's failure to file *in forma pauperis* documentation.[56] Plaintiff admits that lawsuit covers the same conduct as the current action.[57] Plaintiff also filed another lawsuit covering the same conduct in the Middle District of

---

[49] *Id.*
[50] *Id.* at 16-17.
[51] *Id.* at 17.
[52] *Id.*
[53] *Id.*
[54] Doc. 96 at 1.
[55] *Id.* at 2.
[56] *Id.*
[57] *Id.*

7

Pennsylvania, docketed as No. 4:16-CV-2280.[58] That lawsuit was ultimately dismissed on June 15, 2018 for failure to prosecute.[59]

## II.  STANDARD OF REVIEW

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.[60] A disputed fact is material when it could affect the outcome of the suit under the governing substantive law.[61] A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[62] The Court should view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor.[63] When the non-moving party fails to refute or oppose a fact, it may be deemed admitted.[64]

Initially, the moving party must show the absence of a genuine issue concerning any material fact.[65] Once the moving party has satisfied its burden, the non-moving party "must present affirmative evidence in order to defeat a properly

---

[58] *Id.*
[59] *Id.*
[60] Fed. R. Civ. P. 56(c).
[61] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[62] *Id.* at 250.
[63] *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).
[64] *See* Fed. R. Civ. P. 56(e)(2); Local R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.").
[65] *See Celotex Corp. v. Carrett*, 477 U.S. 317, 323 (1986).

supported motion for summary judgment."[66] "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla."[67] "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c)," a court may grant summary judgment or consider the fact undisputed for purposes of the motion.[68]

If the court determines that "the record taken as a whole could not lead a rational trier or fact to find for the non-moving party, there is no 'genuine issue for trial.'"[69] Rule 56 mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.[70]

Here, Plaintiff has failed to oppose the motion or refute the facts asserted in Defendant's statement of facts. Pursuant to Federal Rule of Civil Procedure 56(e),[71] the Court has reviewed the facts contained in the statement of facts as well as each fact's citation to the record and will consider each fact undisputed.[72] A thorough and comprehensive review of the record makes clear that no material fact is in

---

[66] *Anderson*, 477 U.S. at 257.
[67] *Hugh*, 418 F.3d at 267 (citing *Anderson*, 477 U.S. at 251).
[68] Fed. R. Civ. P. 56(e)(2)-(3).
[69] *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).
[70] *Celotex Corp.*, 477 U.S. at 322.
[71] *See* Fed. R. Civ. P. 56(e)(1).
[72] *See* Fed. R. Civ. P. 56(e)(2).

dispute as to the dispositive issue in this case. As such, summary judgment is appropriate.[73]

### III. DISCUSSION

Defendants argue that the majority of Plaintiff's claims are time barred. The statute of limitations for a civil action brought pursuant to 42 U.S.C. § 1983 "is governed by the personal injury tort law of the state where the cause of action arose."[74] "The statute of limitations for a § 1983 claim arising in Pennsylvania is two years."[75] The accrual date of a § 1983 claim is governed by federal law, and under the "the standard rule" accrual occurs "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."[76] Put another way, "the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages."[77]

Plaintiff filed the instant action on or about August 19, 2017.[78] The actions of which he chiefly complains, however, occurred, at the very latest, in 2014, more than two years before he filed the complaint. Thus, any causes of action arising from

---

[73] *See* Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it.").
[74] *Kach v. Hose*, 589 F.3d 626, 634-35 (3d Cir. 2009) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)).
[75] *Id.* (citing 42 Pa. Cons. Stat. § 5524(2)). *See also Kost v. Kozakiewicz*, 1 F.3d 176, 189–90 (3d Cir. 1993).
[76] *Wallace*, 549 U.S. at 388.
[77] *Id.* at 391.
[78] *See* Doc. 1 at 20.

these incidents are time barred, as they occurred approximately three years before this lawsuit was filed.

In the complaint, however, Plaintiff also references a prior lawsuit he filed in October 2015, which, if Plaintiff could state a First Amendment access to the courts claim, would not be time barred. The First Amendment protects a prisoner's fundamental constitutional right of access to the courts. That right, however, is not an independent right of access to adequate law libraries or persons trained in the law.[79] Rather, "[a] prisoner making an access to the courts claim is required to show that the denial of access caused actual injury."[80] This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."[81] In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains.[82] An actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts.[83] "[T]he underlying cause of action . . . is an element that must be described in the complaint."[84]

---

[79] *Lewis v. Casey*, 518 U.S. 343, 350-51 (1996).
[80] *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (quoting *Lewis*, 518 U.S. at 350).
[81] *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).
[82] *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (affirming dismissal of denial of access claims where plaintiff failed to connect alleged deficiencies in library to harm in underlying action).
[83] *Christopher*, 536 U.S. at 415.
[84] *Id.*

11

Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney.[85]

Plaintiff has simply not alleged in the amended complaint nor presented any fact from which the Court could conclude that Plaintiff was prevented from accessing the courts regarding the lawsuit filed in October 2015. Specifically, in that action, the Court dismissed the lawsuit because Plaintiff had, after being given two opportunities to do so, failed to comply with the Court's procedures regarding proceeding *in forma pauperis*.[86] A review of the docket reveals that Plaintiff was corresponding with the Court during this time.[87] Plaintiff was clearly able to access the courts; he simply failed to follow its rules. In sum, Plaintiff has failed to identify an injury resulting from the conditions of which he complains.[88]

The undisputed material facts demonstrate that the majority of Plaintiff's claims are time barred, and that, to the extent that Plaintiff intended to assert a First Amendment access to the courts claim from the 2015 civil rights action, any such claim fails as a matter of law. As such, the Court will enter judgment in favor of

---

[85] *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977); *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)). *See also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013).
[86] *See* No. 15-cv-1959, Doc. 11.
[87] *See*, *e.g.*, No. 15-cv-1959, Docs. 8 (filed October 21, 2015), 10 (filed November 6, 2015).
[88] *See Diaz*, 532 F. App'x at 63. Although Plaintiff alleges in conclusory fashion that he was "denied access to the court's [sic]" which "caused plaintiff to miss several court deadlines," Plaintiff at no point identifies any such deadlines or actual injury resulting from missing those alleged deadlines.

Defendants and as against Plaintiff on all claims contained in the amended complaint.

## IV. CONCLUSION

Based on the foregoing, the motion for summary judgment will be granted. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge